IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HAROLD HOWARD and                          :
APRIL DIENG
    Plaintiffs                              :
                                                     Civil Action No. PJM-04-3830
v                                          :

ARTHUR SMITH, *et al.*                      :
    Defendants

o0o
## MEMORANDUM OPINION

Pending in this civil rights case are Defendants' Motions to Dismiss or for Summary Judgment. Papers No. 22 and 30. Plaintiff Howard has filed, in opposition to Defendants' first Motion to Dismiss or for Summary Judgment, an amended complaint. Paper No. 26. Plaintiff Dieng has not opposed either of Defendants' motions and Plaintiff Howard has not opposed Defendants' second Motion to Dismiss or for Summary Judgment. Both Plaintiffs were advised of their right to file an opposition to the motions and of the consequences of failing to do so.[1] Paper No. 24 and 31. Upon review of the papers filed, this Court finds a hearing in this matter unnecessary. Local Rule 105.6.

**Background**

Plaintiffs allege that on September 21, 2004, the Washington County police were called by Plaintiff Dieng to have a "violent drug gang" removed from her house.[2] Paper No. 1. Sergeant

---

[1] Dieng is no longer incarcerated at the Washington County Detention Center. She has failed to provide this Court with a new address. *See* Papers No. 27, 34 and 35.

[2] Defendants have submitted a police report regarding the incident. Paper No. 22 at Ex. C, p. 5. The report indicates that police were contacted on September 16, 2004, and that Dieng asked that two women in her house be removed by police. *Id*. Plaintiffs do not dispute that the actual incident took place on September 16, 2004, and appear to adopt Defendants' time references in their amended Complaint. Paper No. 26. The police officers who responded, Sergeant Robinson and Officer Lehman, found the two women in an upstairs bedroom. Paper No. 22 at Ex. C, p. 3. When searched, the two women were in possession of narcotics and drug paraphernalia and were taken into custody. *Id*.

Robinson and Officer Lehman explained to Dieng that the gang leader, Larry Derr, also known as Face, had set up drug dealing businesses in several women's houses and that he was a very violent man. Paper No. 1. Plaintiff Dieng alleges she asked the officers for their help because she feared retaliation from Derr upon his discovery that she had called the police. *Id*.

On September 17, 2004, Plaintiffs claim that Derr returned to Dieng's home accompanied by his colleagues. *Id*. Plaintiff Dieng permitted his entry into her house only after he attempted to kick the door down. *Id*. She claims that Derr assaulted her and ripped the phone out of the wall once he gained entry into the house. *Id*. Howard claims he was held at gun point and forced to give Derr and his associates money in order to avoid being killed or seriously injured. *Id*. Dieng claims she was told by Derr that if she did not continue dealing drugs from her house that she would be killed. *Id*. Plaintiffs do not deny that they complied with Derr's demands.

Plaintiffs allege that Defendants came to Dieng's home with a search warrant and, upon executing that warrant, found drug paraphernalia. *Id*. They claim they were threatened with arrest if they did not agree to cooperate with police efforts to arrest Derr. *Id*. Plaintiffs further allege they told Defendants that Derr was forcing them to sell drugs and that their lives were in danger. *Id*. Plaintiffs claim that they were assured that police would watch the house for Derr's return, yet when he did return to renew his threats against Plaintiffs, the police took no action. *Id*. Plaintiffs do not allege that police were called for assistance while Derr was in the house.

On October 8, 2004 a second search warrant was served on Plaintiffs, resulting in their arrests for possession with intent to distribute controlled dangerous substances. *Id*. Upon her arrest, Dieng's minor child was placed into the custody of the Department of Social Services. *Id*. Both Howard and Dieng were released on bail, whereupon they returned to Dieng's house. *Id*.

Derr again returned to Dieng's house and offered to forgive the debts owed to him by Plaintiffs if they continued to sell drugs. Dieng claims she wrote letters to the Street Crimes Unit of the Hagerstown Police Department informing them of the threats being made against her and Howard. Paper No. 1 and 26. Dieng alleges that she cooperated with the police by allowing them to come into her house. Paper No. 1. She further claims that Derr found out about her cooperation with police, came into her house, beat her severely, and did not permit her to leave the house for approximately 24 hours. Paper No. 1 and 26. Plaintiffs claim they were permitted to go to the upstairs bedroom to sleep and when they awoke they discovered Derr had left. *Id*. Dieng contacted police and filed charges of criminal assault against Derr and he was arrested. *Id*.

Plaintiffs allege that even after Derr's arrest they were harassed by his associates who continued to make death threats against them if they did not accept delivery of packages of drugs to be sold. Paper No. 1. A third search warrant was issued for Dieng's house and more drug paraphernalia was discovered. *Id*. Plaintiffs were arrested again. *Id*. Howard claims that he was put in the same cell block as Derr and other gang leaders who forced him to sign a letter stating that he had never been threatened. *Id*.

Plaintiffs claim that they were improperly denied protection from Derr and his gang when police refused to arrest them and used Plaintiffs as bait to catch Derr. They further claim that Howard was intentionally placed on the same cell block as Derr. They claim that the affidavits supporting the search warrants represent an abuse of process against them. They allege, in support of their claim for damages, that Dieng's son was taken from her and that she was evicted from her home. Howard claims his property was lost or destroyed as a result of Defendants' actions.

**Standard of Review**

3

Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 473 (4th Cir. 1997). Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The court, however, need not accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to actual events. *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Summary Judgment

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Pulliam*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of and construe the facts in the light most favorable to the non-moving party. *See Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 437 (4th Cir. 1998). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *See Anderson*, 477 U.S. at 256.

In *Celotex*, the Supreme Court stated:

> In cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." Such a motion, whether or not accompanied by affidavits, will be "made and supported as provided in this rule," and Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

*Celotex*, 477 U.S. at 324. However, "'a mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967)). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

**Analysis**

Plaintiffs claim Defendants violated their rights when they did not provide them with

5

protection from Derr and his associates. Specifically, they allege that Defendants' failure to arrest Derr and their use of Plaintiffs as "bait" to catch him violated their constitutional rights.[3] Ordinarily, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Department of Social Services*, 489 U.S. 189, 197 (1989). The State may, however, be liable where there is an affirmative duty to protect an individual from harm where there is a special relationship between the state and the individual, or where the state has enhanced or created the danger to the individual. *See Id.* at 201.

Defendants claim they are entitled to qualified immunity. In considering this defense, this Court must consider whether, at the time of the claimed violation, Plaintiffs' alleged constitutional rights were clearly established and "whether a reasonable person in the official's position would have known that his conduct would violate that right." *Rish v. Johnson*, 131 F. 3d 1092, 1095 (4th Cir. 1997) *citation omitted*. "In particular, . . . qualified immunity protects law officers from 'bad guesses in gray areas' and it ensures that they may be held personally liable only 'for transgressing bright lines.'" *Gomez v. Atkins*, 296 F. 3d 253, 261 (4th Cir. 2002) quoting *Maciariello v. Sumner*, 973 F. 2d 295, 298 (4th Cir. 1992). "Thus, government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Waterman v. Batton*, 393 F. 3d 471, 476 (4th Cir. 2005) *quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Defendants assert under oath that Plaintiffs were never told that special protection would be

---

[3] Plaintiffs allege violation of their Fifth, Eighth and Fourteenth Amendment rights.

provided to them by the Hagerstown Police Department. *See* Paper No. 22 at Ex. D– H. Plaintiffs do not dispute that assertion. There is no allegation that Defendants were informed of an ongoing criminal assault against Plaintiffs which they refused to remedy. Indeed, when Dieng filed charges of criminal assault against Derr he was arrested. There is no evidence in this case that any special relationship existed between Plaintiffs and Defendants which might have entitled Plaintiffs to special protection. *See e.g. Farmer v. Brennan*, 511 U.S. 825 (1994). Even if Defendants were warned by Plaintiffs that Derr posed a threat of harm to them, that information was not enough to invoke a higher standard of care.

To the extent that the allegation against Defendants is that they somehow enhanced the danger to Plaintiffs, there is no evidence of any affirmative act by Defendants that increased the danger posed by Derr. *See e.g. Sloane v. Kanawha County Sheriff Dept.*, 342 F. Supp. 2d 545 (D. S.D. W. Va. 2005) (repeated questioning of juvenile rape suspect leading to suicide). The failure of Defendants to arrest Derr does not support a finding that the danger was enhanced. The failure to arrest a suspect is not an affirmative action upon which civil liability may be based. "It cannot be that the state 'commits an affirmative act' or 'creates a danger' every time it does anything that makes injury at the hands of a third party more likely." *Pinder v. Johnson*, 54 F. 3d 1169, 1175 (4th Cir. 1995). Thus, Plaintiffs have failed to allege a violation of a clearly established right, and Defendants are entitled to qualified immunity with respect to this claim.

Howard's claim that his property was destroyed or lost as a result of Defendants' conduct does not state a constitutional claim. To the extent he is asserting a violation of his due process rights, the Due Process Clause requires only the availability of an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U. S. 527, 542-44 (1981), *overruled on other grounds by Daniels v.*

7

*Williams*, 474 U. S. 327 (1986). Maryland's Tort Claims Act[4] provides such a remedy. *See Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982). Accordingly, the claim regarding Howard's property must be dismissed.

Howard claims that Defendants violated his Eighth Amendment rights because he was incarcerated in the same cell block as Derr. Paper No. 1 and 26. To the extent that he was a pre-trial detainee at the time, the claim is governed by the Fourteenth Amendment. The constitutional protections afforded to a pre-trial detainee as provided by the Fourteenth Amendment are co-extensive with those provided by the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). In order to prevail on such a claim Howard must establish that Defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v. Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). Defendants assert, and Plaintiff does not dispute, that they had no control over Howard's cell assignment at the county detention center. Paper No. 22 at Ex. D– H. Further, Howard has failed to provide evidence that any named defendants were informed of a known risk of harm to him and subsequently failed to exercise authority to alleviate that harm. Defendants are entitled to summary judgment in their favor on this claim.

Plaintiffs' claims concerning their arrest and the alleged abuse of process to effect their arrests are similarly subject to dismissal. To the extent that the claim calls into question the validity of Plaintiffs' subsequent criminal convictions,[5] the claim is barred by the holding in *Heck v. Humphrey*, 512 U. S. 477 (1994). A claim for damages amounting to a challenge of the legality

---

[4] In the instant case, the property claim is governed by the Local Government Tort Claims Act. *See* Md. Cts & Jud. Proc., Code Ann. § 5-304.

[5] Plaintiffs do not include any information regarding the disposition of the criminal charges against them.

of a conviction are not cognizable in a 42 U.S.C. § 1983 action unless and until the conviction is reversed, expunged, invalidated, or impugned and complaints containing such claims must therefore be dismissed without prejudice. *See Id.* at 487. Plaintiffs' claims relating to the validity of any search warrants, affidavits issued in support thereof, or arrests made as a result, must therefore be dismissed without prejudice.

Dieng's claims regarding the loss of custody of her child and eviction from her home because of her arrest fail to state a claim upon which relief may be granted. The placement of a minor child in foster care upon the arrest of the custodial parent is a state law matter to be pursued through the appropriate state court.[6] Moreover, there is no evidence or even an allegation that suggests the placement was in any way improper.[7] Plaintiff was evicted from her home because drugs were being sold from the premises.[8] *See Gilmore v. Housing Authority of Baltimore City*, 170 F. 3d 428, 429–30 (4th Cir. 1999) (noting Maryland public housing authority may choose to bypass administrative hearing requirements for evictions in cases of drug offenses by tenants). She does not deny selling drugs from her home and does not dispute Defendants' assertion that she was not forced by them to sell drugs. Without evidence that Defendants engaged in conduct to cause her eviction, there is simply no claim stated.

---

[6] *See* Md. Cts. & Jud. Proc., Code Ann. § 3-801 *et seq.*

[7] A "child in need of assistance" is defined in part as a child whose "parents, guardian, or custodian are unable or unwilling to give proper care and attention to the child and the child's needs." Md. Cts & Jud. Proc., Code Ann. § 3-801(f). Upon Plaintiff's custodial arrest, Dieng was no longer able to care for her child.

[8] Dieng's residence was property maintained by the Hagerstown Housing Authority. Paper No. 22 at Ex. A, p. 23.

9

Accordingly, Defendants' Motions for Summary Judgment shall be granted by separate Order which follows.


| _1/3/06_ | _____/s/_____ |
|---|---|
| Date | PETER J. MESSITTE |
|  | UNITED STATES DISTRICT JUDGE |